[No. 303-2.    Division Two.    December 1, 1971.]

MAYMIE A. MOLLETT, *Respondent,* v. UNITED BENEFIT LIFE INSURANCE COMPANY, *Appellant.*

*Lester T. Parker,* for appellant.

*Paul A. Bitar (B. Rolf Espedal,* of counsel), for respondent.

PEARSON, J.—This appeal involves a dispute over the proceeds of a mortgage protection life insurance policy which was omitted from the property settlement provisions of a divorce decree.

The named insured in the policy was Rolfe Mollett, who had designated his estate the beneficiary in 1957. He died on October 18, 1962, at which time a death benefit of $4,500 was paid to his estate by defendant, United Benefit Life Insurance Company. Rolfe Mollett's former wife, Maymie Mollett, brought this action against his estate and the insurance company, seeking to recover the policy proceeds from the company only. Her claim was grounded on a restrictive endorsement placed upon the policy in 1952. By this endorsement, Rolfe relinquished the right to change the beneficiaries, one of which was his then wife, Maymie Mollett.

Rolfe and Maymie Mollett were divorced on January 24, 1958. The insurance policy was not mentioned in the divorce decree, nor in the findings of fact and conclusions of law upon which the decree was based. However, one of the conclusions of law, after designating that certain items of property should be awarded to Maymie Mollett, did declare: "that all remaining real and personal property of the parties should be awarded to plaintiff [Rolfe] as his sole and separate property . . ." This residuary award was not carried over into the decree.

The trial court, relying upon the restrictive endorsement, awarded the entire policy proceeds to the plaintiff by granting her motion for summary judgment against the company. She was also allowed interest on the proceeds from the time of payment to the estate. The defendant, United Benefit Life Insurance Company, appeals.

A brief history of the policy is necessary to an understanding of the issues raised by this appeal. The policy, denominated a "mortgage protection" policy, was taken out by the marital community of Rolfe and Maymie in 1949. The original beneficiary designation was "Florence S. Heikel, Mortgagee, as her interest may appear, the balance, if any, to Maymie A. Mollett, wife."

On September 23, 1952 the beneficiary designation was changed to read: "Florence S. Heikel, Mortgagee or in the event of her prior death to Helen Craig, Mortgagee, as the interest of said Mortgagees may appear, the balance if any to Maymie A. Mollett, wife."

At this time the restrictive endorsement was made which provided: "The insured does not reserve the right to further change the beneficiary."

Subsequently, and without the consent of the protected beneficiaries, three additional changes were made by which creditors were either added or deleted as beneficiaries under the policy. The last of these occurred a few months prior to the divorce, when Rolfe's estate was designated the sole beneficiary. The explanation for this change appears in an answer to an interrogatory made by the insurance company:

Sometime prior to September 3, 1957, we received a request for change of beneficiary to protect certain named creditors:

McKesson-Robbins — Seattle .............. $1,607.07
Northwestern Drug — Tacoma .............. 6,561.86
Mrs. Florence Heikel — Hoquiam ........... 2,500.00
Peoples First Natl. Bank — Hoquiam ........ 1,675.00

After correspondence between the insured and the company it was our suggestion that the estate be named as beneficiary due to the settlement difficulties that would arise in case of death; that is, in determining the various amounts due each of these creditors.

The decree of divorce entered in 1958 required Rolfe to pay all of the community debts, including those owed the above creditors.

It thus appears without dispute, that from the time the

marital community acquired this policy, both before and after the restrictive endorsement, and up to the time of the divorce, the policy was used by the marital community as security for loans benefiting the community—and of course, the premiums until after the divorce were paid for by community funds.

The law is well settled that the failure of Rolfe and Maymie Mollett to have the policy distributed by the decree would normally result in their ownership of the proceeds as tenants in common. *Pittman v. Pittman,* 64 Wn.2d 735, 393 P.2d 957 (1964). All parties to this appeal recognize this rule. Defendant, however, asks for application of that rule only in the event reformation of the divorce decree is not possible or in the event the doctrine of equitable estoppel does not apply to foreclose plaintiff's claim. Plaintiff, on the other hand, recognizes the tenancy in common which arises with reference to undistributed community property, but contends that the restrictive endorsement made the proceeds of the policy Maymie's separate property and because the policy was not awarded by the decree, her separate interest was perpetuated. *See Ambrose v. Moore,* 46 Wash. 463, 90 P. 588 (1907); *Neeley v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964). Plaintiff also argues that the policy proceeds could be characterized as Maymie's separate property by presumption of gift arising at the time she was named irrevocable contingent beneficiary of the policy.

We do not think reformation of the divorce decree is possible at this time. The decree obviously made no disposition of the policy, nor was it mentioned. After Rolfe's death, the subject matter of that action ceased to exist. *Crockett v. Crockett,* 27 Wn.2d 877, 181 P.2d 180 (1947); *Jones v. Minc,* 77 Wn.2d 381, 462 P.2d 927 (1969).

We are also not persuaded that an issue of fact exists on a theory of equitable estoppel. Both parties were equally to blame for the failure to effectively distribute the policy in the decree. However, in our view, the trial court was in error under the undisputed facts of the case, in

awarding the entire policy proceeds to plaintiff and in departing from the well-established rule discussed in *Pittman v. Pittman, supra.*

We view this appeal as presenting a conflict between a contract designation of beneficiary and the community property law of this state. We are of the opinion that there are strong reasons for holding that the community property law should prevail. *See Neeley v. Lockton, supra.*

Admittedly, when the policy was acquired it was a community asset and community funds were used to pay the premium until divorce terminated the community. The main purpose of the policy was to offer security to various community creditors who were primary beneficiaries both before and after the restrictive endorsement was added. It is reasonable to assume that the restrictive endorsement was intended as an inducement to the creditors who were primary beneficiaries, rather than an intended gift to Maymie Mollett, the contingent beneficiary.

As stated above, when the marital community was terminated by divorce, Rolfe was made responsible for the payment of the creditors who had received security by the policy. Had the mortgage protection policy been brought to the attention of the trial court who presided over the divorce proceedings, such court would have had the power, notwithstanding the restrictive endorsement, to award the policy to Rolfe as continued security for the creditors. The designation of Maymie Mollett as an irrevocable contingent beneficiary would have been no impediment to the trial court in awarding the entire policy to Rolfe, since the court in an action for divorce is vested with statutory authority to divide all property of the parties.[1] RCW 26.08.110. *See Worthington v. Worthington,* 73 Wn.2d 759, 440 P.2d 478 (1968).

Neither Rolfe nor Maymie is blameless for the failure to

---

[1] It is clear, also, that a policy such as this, even with no cash surrender value, does constitute property and not a mere expectancy. *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968); *Stephen v. Gallion,* 5 Wn. App. 747, 491 P.2d 238.

include the policy in the dispositions made in the divorce decree. The arguments presented here could have been made then. The findings of fact, with the residuary finding to award Rolfe the balance of the property, persuade us that Rolfe was intended to receive the policy and the oversight in not carrying that residuary award into the decree is the sole reason this case is before us.

Neither party to the divorce should be entitled to profit by his neglect. A fair result is achieved by characterizing this policy as community property at the time of the divorce and holding that the estate and Maymie Mollett share the proceeds as tenants in common. It is grossly unfair to permit the contract designation of Maymie Mollett as contingent benficiary to prevail where the policy was used as an instrument of benefit to the community after the restrictive endorsement was added. *See Neeley v. Lockton, supra.*

For these reasons, the judgment is modified so as to award Maymie Mollett judgment against the defendants for one-half the policy proceeds, together with accrued interest on that one-half from the date of payment of the proceeds of the policy to the estate.

ARMSTRONG, J., concurs.

PETRIE, C.J. (dissenting)—I am compelled to dissent. It is a fundamental tenet of insurance contract law that one who has been irrevocably designated a beneficiary of a life insurance policy acquires a vested interest in the proceeds thereof, which can neither be impaired nor extinguished by the insured, nor by the insurer, nor by the two acting together. 4 R. Anderson, Couch on Insurance 2d § 27:56 (1960); 2 J. Appleman, Insurance Law and Practice § 911 (1966). Through the years, no decision in this jurisdiction has in the slightest degree altered this basic tenet. *Massachusetts Mut. Life Ins. Co. v. Bank of California*, 187 Wash. 565, 60 P.2d 675 (1936); *Toulouse v. New York Life Ins. Co.*, 40 Wn.2d 538, 245 P.2d 205 (1952); *Occidental Life Ins. Co. v. Gannon*, 57 Wn.2d 868, 360 P.2d 350 (1961). On September 23, 1952, Florence S. Heikel, Helen Craig and

Maymie A. Mollett, collectively, acquired a vested interest in the proceeds of the policy issued by appellant on Rolfe Mollett's life, of which, under the terms of the policy, they could not be divested "without the written consent of such beneficiary." Neither Ms. Heikel, Ms. Craig, nor Ms. Mollett ever consented in writing to any change of beneficiary. Thus any purported changes in designation of the beneficiary subsequent to September 23, 1952, are totally inconsistent with the terms of the contract, totally invalid, and of no force and effect in detracting from the vested rights of the irrevocably named beneficiaries. Certainly, the decree of divorce did not in any manner purport to nor in fact alter the rights of the beneficiaries.

Accordingly, at Rolfe Mollett's death, the appellant was obliged to pay whatever proceeds were then available to one or more of the last validly named beneficiaries. Whatever proceeds are paid to one are held in trust for the benefit of the others as each interest appears. For reasons not indicated in the record, neither Ms. Heikel nor Ms. Craig ever asserted any claim to the proceeds of the policy. Accordingly, the entire proceeds should be paid to Maymie Mollett. The exact amount of Maymie's vested interest in the insurance proceeds became determinable at Rolfe's death, but did not vest because of his death.

I would affirm the judgment.

Petition for rehearing denied January 18, 1972.

Appealed to Supreme Court February 7, 1972.